**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **ALLAH QUDDOOS ALLAH a/k/a** )<br>**ELIJAH THOMAS,** )<br> )<br>            **Plaintiff,** )<br> )<br>      **v.** )<br> )<br>**Warden TOM GRAMIAK,** *et al.,* )<br> )<br>            **Defendants.** )<br> ) | **CIVIL ACTION NO. 5:13-CV-186 (MTT)** |

## ORDER

Before the Court is the Recommendation of United States Magistrate Judge Stephen Hyles (Doc. 35) to grant Defendant Ann Tyndal's motion to dismiss (Doc. 27) the amended complaint (Doc. 13) because she is entitled to qualified immunity. The Plaintiff Allah Allah objected to the Recommendation. (Doc. 36). Having reviewed the Recommendation and the Plaintiff's objection, and having made a *de novo* determination of the portions of the Recommendation to which the Plaintiff objects, the Court **REJECTS** the Recommendation and **DENIES** the Defendant's motion to dismiss.

## I.    BACKGROUND[1]

The claim against Tyndal arises out of events surrounding a broken continuous positive airway pressure ("CPAP") machine used by Allah to alleviate the problems and risks associated with his obstructive sleep apnea. Four years before Allah filed his complaint, a physician diagnosed Allah with obstructive sleep apnea and prescribed a CPAP machine to help him breathe while he sleeps. (Doc. 1-1 at 5). Without it, Allah

---

[1] At the motion to dismiss stage, the Court must take the facts alleged in the amended complaint as true. Moreover, because Allah incorporates by reference his original complaint, the Court also considers the facts alleged in the original complaint.

"periodically stops breathing, chokes[,] and gasps for air during sleep."  (Doc. 13 at ¶ 47).  Allah alleges his roommate told him he "appears to be choking in his sleep."  (Doc. 1-1 at 5).  Moreover, the machine allegedly prevents possible death by suffocation. (Doc. 13 at ¶¶ 59-60).  However, the tubing for the face mask on his machine had deteriorated, so the machine no longer worked properly.  (Doc. 13 at ¶ 46).

In September 2012, Allah met with Tyndal, whose job was to order medical parts and supplies prescribed by a physician.  (Doc. 1-1 at 3, 7-8).  Tyndal informed Allah his machine was outdated and the face mask and tubing needed to be replaced.  (Doc. 13 at ¶ 49).  She instructed him to bring his CPAP machine to her so that she could order replacement parts, and he complied.  (Doc. 13 at ¶ 49).  After the new parts arrived, Allah met with Tyndal again, but the parts did not fit his CPAP machine model.  (Doc. 13 at ¶ 50).  Tyndal said that a new machine would have to be ordered, and she would continue to search for replacement parts.  (Docs. 13 at ¶ 52; 1-1 at 8).  Several months went by, but Allah never heard from Tyndal again.  (Doc. 1-1 at 8).  Tyndal subsequently retired in late February 2013 at the latest.  (Doc. 1-1 at 10).

In January 2013, five months after his initial appointment with Tyndal, Allah filed a grievance for the failure to provide him a working CPAP machine.  (Doc. 13 at ¶ 54). During the grievance process, Allah alleges Tyndal "wrote a statement claiming [Allah] failed to bring his CPAP machine to medical—when laid in for sick call as requested— as a result no CPAP parts would be ordered for his machine."  (Doc. 13 at ¶ 61). According to Allah, however, he complied with Tyndal's instructions to bring in the CPAP machine.  (Doc. 13 at ¶ 49).  Thus, he contends Tyndal knowingly lied to Warden Gramiak and otherwise "intentionally and maliciously engaged in acts via fraudulent

statements[] to subvert and preclude [him] from receiving proper medical treatment." (Doc. 13 at ¶¶ 49, 61-62).  His grievance was denied.  (Doc. 13 at ¶ 62).  No new CPAP parts were ordered until February when a Nurse Lovett reordered them.  They arrived on February 27, 2013.  (Doc. 1-1 at 9-10).

Allah asserted a claim pursuant to 42 U.S.C. § 1983 for deliberate indifference to his medical needs.  Allah named Tyndal, among other prison employees, as a defendant in her individual and official capacities.  (Doc. 1-1).  In his first Recommendation (Doc. 20), Magistrate Judge Hyles recommended dismissing all claims against Warden Gramiak and Deputy Warden Chaney and Allah's official capacity claim against Tyndal.  Magistrate Judge Hyles recommended that Allah's claim against Tyndal in her individual capacity go forward.  (Doc. 20 at 16).  The Court adopted the Recommendation.  (Doc. 25).

The pending motion to dismiss primarily argues that Allah's amended complaint fails to state a claim because Allah "fail[ed] to demonstrate that Defendant Tyndal was deliberately indifferent to his serious medical needs."  (Doc. 27-1 at 6).  The motion also raises Tyndal's qualified immunity defense, but just barely.  Although the amended complaint states Tyndal was deliberately indifferent to Allah's serious medical needs and "proximately cause[d]" his inability to receive a working a CPAP machine, Tyndal does not identify, much less address, the alleged constitutional violation or whether it was clearly established.  The motion simply states: "Plaintiff cannot show that the law regarding Defendant's alleged actions was clearly established such that her action would amount to a § 1983 violation."  (Doc. 27-1 at 12).  In his brief in response to the motion to dismiss, Allah argues, as he alleges in his complaint and amended complaint,

that Tyndal's actions constituted deliberate indifference to his serious medical needs and cites to cases regarding deliberate indifference.  (Doc. 31 at 4-5)  Tyndal's reply brief, on the issue of qualified immunity, simply states she is entitled to qualified immunity because Allah failed to sufficiently allege she was deliberately indifferent. (Doc. 34 at 2).

The Recommendation now before the Court recommends granting Tyndal's motion to dismiss on qualified immunity grounds because "[t]here is no law, case law or otherwise, that establishes that a prison employee's false statements resulting in a grievance denial is unconstitutional."  (Doc. 35 at 6).

## II.   DISCUSSION

### A.  Motion to Dismiss Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Where there are

dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

### B. Qualified Immunity Standard

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1291 (11th Cir. 2009)). To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation." *City of W. Palm Beach*, 561 F.3d at 1291. This two-step analysis may be done in whatever order is deemed most appropriate for the case. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The clearly established law[2] must provide a defendant with "fair warning" that her conduct deprived the plaintiff of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002). A plaintiff "can demonstrate that the contours of the right were clearly established in several ways." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012).

---

[2] Clearly established law in this circuit means decisions of the United States Supreme Court, the Eleventh Circuit, and the highest court of the pertinent state. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

First, a plaintiff can show that "a materially similar case has already been decided." *Id.* (internal quotation marks and citations omitted).  Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* (internal quotation marks and citation omitted).  "Finally, the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'" *Id.* (citation omitted).  "[E]xact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

C. **Analysis**

Tyndal moves to dismiss the deliberate indifference claim against her, arguing *inter alia* that she is entitled to qualified immunity.[3]  It is beyond dispute that Tyndal was acting within her discretionary authority.  Therefore, the qualified immunity inquiry turns on whether Tyndal allegedly violated a constitutional right that was clearly established.

Reasonably construed, Allah's amended complaint alleges Tyndal violated his constitutional right to necessary, prescribed medical care for his serious medical condition without an inordinate delay when she failed to provide him a working CPAP machine to alleviate the risks associated with his obstructive sleep apnea and then intentionally subverted his efforts to receive a machine, knowing her actions would

---

[3] Tyndal also argues Allah is not entitled to recover money damages as a "three-strike" plaintiff because his request for injunctive relief is now moot because Tyndal no longer works at the prison, and a "three-strike" inmate cannot proceed *in forma pauperis* on a claim for money damages.  (Doc. 27-1 at 7-8).  The Court is not persuaded by this.  "It is generally accepted that once the [imminent danger] exception has been invoked, it persists throughout the case despite any post-complaint changes in circumstances." *Logue v. Pearson*, 2011 WL 2457501, at *1 n.1 (S.D. Ga.) (citing *Anderson v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007)).  Moreover, none of the cases Tyndal cites compels the conclusion that a "three-strike" plaintiff allowed to proceed under the imminent danger exception can no longer proceed *in forma pauperis* because equitable relief became unavailable during post-screening litigation.

cause further delay.[4]  As noted, Tyndal's motion to dismiss does not address qualified immunity in any detail.  She merely states a conclusory argument that "Plaintiff cannot show that the law regarding Defendant's alleged actions was clearly established such that her actions would amount to a § 1983 violation."  (Doc. 27-1 at 12).  Nevertheless, the Recommendation concludes that "no law, case law or otherwise[] … establishes that a prison employee's false statements resulting in a grievance denial is unconstitutional. … It is therefore not clearly established that Defendant's actions … violated any constitutional right."  (Doc. 35 at 6-7).

### 1.  Whether Allah Alleged a Constitutional Violation

A medical services provider's "'deliberate indifference to [the] serious medical needs of [a] prisoner[ ] constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment.'"  *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).  "[A] prisoner must shoulder three burdens" to bring a claim for deliberate indifference.  *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1326 (11th Cir. 2007).  First, the prisoner must satisfy the objective component by showing there was a serious medical need.  *Id.* (citing *Bozeman v. Orum,* 422 F.3d 1265, 1272 (11th Cir. 2005)).  Second, he must satisfy the subjective component by showing that the prison official was deliberately indifferent to the serious medical need.  *Id.* (citing *Bozeman,* 422 F.3d at 1272).  Third, the prisoner must show

---

[4] Allah states in his initial complaint:

> This is a civil rights action filed by Plaintiff … for damages … alleging Defendants acting under the color of state law and official office[] jointly and severally acted deliberately indifferent to Plaintiff's serious medical needs by their failure to take corrective action or insure Plaintiff was provided with a "substitute" C.P.A.P. machine and C.P.A.P. parts … timely ordered and delivered to plaintiff while cognizant Plaintiff had been diagnosed with "obstruct[ive] sleep apnea," via medical records, and that the seal on his "pressurized" face-nose mask was severely worn/deteriorated preventing the pressurization of air via sick call forms and grievance.

(Doc. 1-1 at 1).

that the defendant's wrongful conduct caused the injury.  *Id.* (citing *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow*, 320 F.3d at 1243 (quoting *Hill v Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (internal quotation marks omitted)).  In either situation, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'"  *Id.* (citation omitted).  Allah's obstructive sleep apnea satisfies either definition.  *See Howard v. Goord*, 2001 WL 739244, at *2 (E.D.N.Y.) ("This accords with the observations of courts that have considered the issue and found sleep apnea to be a dangerous medical condition.").  A physician diagnosed Allah with obstructive sleep apnea and prescribed a CPAP machine so that he could breathe while he slept without choking and gasping for air.  (Doc. 13 at ¶¶ 45, 47).  In fact, Tyndal does not deny that Allah has a serious medical condition.  Accordingly, at this stage in the litigation, Allah has sufficiently alleged that he suffered from a serious medical condition.

To satisfy the subjective prong, the prisoner must prove three elements: "'(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'"  *Bozeman,* 422 F.3d at 1272 (quoting *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir. 2004)).  Additionally, "as with any tort claim, [he] must show that the injury was caused by the defendant's wrongful conduct."  *Goebert,* 510 F.3d at 1326 (citing *Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1582 (11th Cir. 1995)).  Ultimately, "[t]he facts alleged must do more than contend medical

malpractice, misdiagnosis, accidents, and poor exercise of medical judgment."
*Simpson v. Holder,* 200 F. App'x. 836, 839 (11th Cir. 2006) (citing *Estelle,* 429 U.S. at
104–07).  Subjective knowledge requires that a defendant "was 'both [] aware of facts
from which the inference could be drawn that a substantial risk of serious harm exists,
and [] must also [have] draw[n] the inference.'"  *Burnette v. Taylor*, 533 F.3d 1325, 1330
(11th Cir. 2008) (alteration added by Eleventh Circuit) (quoting *Farmer v. Brennan*, 511
U.S. 825, 837 (1994)).  A defendant cannot be held liable for a constitutional violation
for failing to alleviate a significant risk that she should have perceived but did not.  *Id.* at
1331 (citing *Farmer*, 511 U.S. at 837).  However, a factfinder may infer from
circumstantial evidence or from "'the very fact that the risk was obvious'" that the
defendant had subjective knowledge.  *Goebert,* 510 F.3d at 1327 (quoting *Farmer,* 511
U.S. at 842).

Here, Allah met with Tyndal on two occasions so that she could find replacement
parts for his CPAP machine prescribed because of his obstructive sleep apnea.  (Docs.
13 at ¶¶ 49-50; 27-1 at 6).  Tyndal, as a member of the medical staff tasked with
obtaining this machine, "might have been expected to appreciate the significance of a
CPAP to [Allah's] health."  *See Meloy v. Schuetzle,* 2000 WL 1160446, at *1 (8th Cir.).
"[A]lthough sleep apnea itself is not fatal, the secondary cardiovascular effects-including
hypertension and stroke-can be."  *Silk v. City of Chicago,* 194 F.3d 788, 795 (7th Cir.
1999).  Accordingly, taking the facts alleged as true and drawing all reasonable
inferences in favor of Allah, Tyndal, as a medical official helping a patient obtain a
machine designed to alleviate the problems and risks associated with obstructive sleep

apnea, was subjectively aware of serious harm that could result should Allah continue to sleep without a CPAP machine.

The inquiry turns to whether Tyndal allegedly disregarded the risk of serious harm by conduct that was more than grossly negligent, and that conduct caused the injury.  After his two visits with Tyndal in September 2012, Allah alleges he never saw or heard from her again.  (Doc. 13 at ¶¶ 49-52).  Therefore, between September 2012 and Tyndal's retirement in February 2013, it can reasonably be inferred she failed to obtain replacement parts or a new CPAP machine.  Moreover, when the warden asked about the machine during the grievance process, she allegedly made a false statement that no replacement parts were ordered because Allah did not bring her his broken machine, when in fact he did.  (Doc. 13 at ¶¶ 53, 61-62).  Shifting the blame for the delay to Allah intentionally subverted and thus further delayed Allah's attempt to receive a working CPAP machine.  (Doc. 13 at ¶¶ 61-62).  Tyndal's inaction, coupled with intentionally subverting his grievance process, demonstrates a conscious disregard of Allah's need for his machine by conduct that was more than grossly negligent.

Accordingly, given the seriousness of obstructive sleep apnea and the "recognized need for … treatment, … the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay," the Court concludes Allah has sufficiently alleged facts to state a plausible claim Tyndal was deliberately indifferent to his serious medical need.  *See Farrow*, 320 F.3d at 1247.

## 2.  Whether the Constitutional Right was Clearly Established

The constitutional right at issue is not whether Allah was entitled to a lie-free grievance process,[5] but whether his Eighth Amendment right to necessary treatment for his serious medical condition without a constitutionally intolerable delay was violated. Specifically, the essential inquiry is whether clearly established law gave Tyndal fair warning her conduct violated this right.  When properly framed, it is apparent that Allah alleges the violation of a clearly established constitutional right.

"Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." *Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (citing *Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir. 1988)).  "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott v. Foley,* 182 F.3d 1248, 1257 (11th Cir. 1999).  Moreover, a delay of treatment may be constitutionally intolerable depending on the reason for the delay and the nature of the medical need.  *Farrow*, 320 F.3d at 1246.  "A defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Id.*; s*ee also Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th

---

[5] Again, Tyndal does not address at all the clearly established prong of her qualified immunity defense; she simply argues that Allah has failed to state a claim and thus qualified immunity is appropriate.  The question of whether the constitutional right alleged by Allah was clearly established first surfaces in the Recommendation, as did the characterization of that right as a right to a grievance process free of Tyndal's lies.  In his objection, Allah objects to that characterization.  (Doc. 36).  He explains, as he did in his complaint and amended complaint, that Tyndal failed to provide proper medical care "resulting in the [t]otal denial of medical care in the form of a working CPAP machine in excess of 'two (2)' years – that [e]xposed him to a [s]erious risk of injury to future health."  *Id.* at 2.  In short, he alleges her deliberately indifferent conduct, including her lies, deprived him of his constitutional right to appropriate medical care.

Cir. 1985) ("[I]f necessary medical treatment has been delayed for non-medical reasons, a case of deliberate indifference has been made out."). Further, where a known or obvious serious medical need is at issue, deliberate indifference may be inferred from an unexplained delay. *Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994). However, "[t]he pre-existing law must give officials some sense of what amount of time constitutes actionable delay in order for the law to be clearly established." *Id.*

"The contours of unreasonable delay in providing treatment for serious medical needs [had been] defined with enough particularity" to give Tyndal fair warning her alleged conduct was unlawful. *See id.* (citation omitted); *see also Alsobrook v. Alvarado*, 477 F. App'x 710, 713 (11th Cir. 2012) (discussing cases where both lengthy and short delays were inexcusable given the medical need and the reason for the delay). This is not a case where the alleged delay lasted a few hours or even days. Rather, Allah was delayed treatment for months for a potentially life-threatening condition, and allegedly for no apparent medical reason. *See Benson v. Gordon Cnty.*, 479 F. App'x 315, 319 (11th Cir. 2012) (citing *Youmans v. Gagnon*, 626 F.3d 557, 564-65 (11th Cir. 2010) (surveying the case law about short and long delays)).

The Eleventh Circuit's analysis in *Benson* is instructive. There, an inmate was prescribed medication for the pain caused by a vertebral compression fracture. *Id.* at 318. The court upheld the denial of the defendant's motion for summary judgment because there was a genuine issue of fact on whether the defendant withheld the medication for days and thus delayed treatment "in a manner proscribed by precedent," which gave her fair warning her conduct violated the Eighth Amendment. *Id.* The court reinforced the "core principle" from *McElligott* that prison officials may not allow an

inmate to needlessly suffer through inordinate delay or grossly inadequate care when they know of a serious medical condition.  *Id.* (citing *McElligott*, 182 F.3d at 1257).  Without citing any precedent relating to the specific medical condition at issue, the court emphasized that intentional refusal to provide necessary medical care for a serious medical condition and an intolerable delay of days in providing that treatment constitutes deliberate indifference in a manner proscribed by precedent.  *Id.* at 319.

Here, the delay of treatment lasted for months for a medical condition even more obviously serious than a painful compression fracture.  Though Allah cites no relevant pre-existing case law about sleep apnea,[6] Tyndal's conduct, if proven, caused an inordinate delay in obtaining a necessary, prescribed treatment for a serious medical condition "in a manner proscribed by precedent."  *Id.*  "Inaction in the face of a known serious medical need, a prescribed course of care, and the failure of an alternative course of care [(such as ordering a new machine)] is not conduct that [a medical official] could reasonably consider lawful."  *Harris*, 21 F.3d at 394.  Again, Tyndal not only failed to obtain replacement parts or a new machine, but she also willfully subverted Allah's attempts to obtain the machine when she lied to the warden, thereby knowingly causing an even longer delay for allegedly non-medical reasons.  Based on the clearly established legal norms that an unreasonable delay of treatment, particularly for non-medical reasons, may be constitutionally intolerable, "a reasonable [medical official] would have known that delaying prescribed treatment for a serious medical need for [months] for a nonmedical reason may violate an inmate's constitutional rights."  *Id.*  Thus, the alleged facts, taken as true with all reasonable inferences drawn in favor of

---

[6] Allah cites to a social security case from the Middle District of Florida where the plaintiff suffered from obstructive sleep apnea, but he does not cite any relevant § 1983 cases.

Allah, demonstrate that Tyndal had fair warning from clearly established law her conduct was unlawful.

Moreover, this case is distinguishable from *Gilmore v. Hodges*, where prison officials failed to provide hearing aid batteries to an inmate with a serious hearing loss condition.  738 F.3d 266, 270-71 (11th Cir. 2013).  The court held that qualified immunity protected the defendants because the seriousness of a hearing loss condition would not necessarily have been obvious to the defendants.  *Id.* at 278.  Further, there was no prior case law concerning hearing loss and hearing aid batteries or a clearly established, applicable principle from case law to fairly warn the defendants their actions were unlawful.  *Id.* at 278-79.  The present case, however, concerns a delay of treatment lasting months for a condition more obviously serious than hearing loss.  As discussed, obstructive sleep apnea can cause a person to stop breathing, choke, gasp for air, and potentially suffocate while sleeping, among other risks, without a CPAP machine.  (Doc. 13 at ¶¶ 59, 60).  Thus, unlike the condition in *Gilmore*, obstructive sleep apnea is obviously serious and poses obviously serious risks if treatment is delayed.  Obstructive sleep apnea is more similar to other conditions that the Eleventh Circuit has found are obviously serious or known to be serious and thus intolerably delaying or withholding necessary medical care poses obviously serious risks.  *See, e.g.*, *Brown v. Johnson*, 387 F.3d 1344, 1346 (11th Cir. 2004) (holding the defendant was deliberately indifferent when he withdrew medication from a plaintiff suffering from hepatitis and HIV which are obviously serious medical conditions).

In sum, taking the allegations as true and drawing all reasonable inferences in favor of Allah, Allah suffers from a serious, potentially life-threatening medical condition

that made the need for the prescribed CPAP machine obvious.  Thus, given the established legal norms regarding unreasonable delay of treatment together with Allah's obviously serious medical condition, Tyndal had fair warning the delay in treatment resulting from her conduct was constitutionally intolerable.  Accordingly, she is not entitled to qualified immunity at this stage in the litigation.

## **CONCLUSION**

For the foregoing reasons, the Recommendation is **REJECTED**, and the Defendant's motion is **DENIED**.

**SO ORDERED,** this 21st day of January, 2015.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT